UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA          :
                                  :
    -v.-                          :       S6 05 Cr. 1067 (KMK)
                                  :
MARION JONES,                     :
                                  :
        Defendant.              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## GOVERNMENT'S SENTENCING MEMORANDUM

                              MICHAEL J. GARCIA
                              United States Attorney for the
                              Southern District of New York

                              SCOTT N. SCHOOLS
                              United States Attorney for the
                              Northern District of California

E. DANYA PERRY
DANIEL W. LEVY
MATTHEW A. PARRELLA
JEFFREY D. NEDROW
JEFFREY R. FINIGAN
Assistant United States Attorneys
      - Of Counsel -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA            :
                                    :
    -v.-                            :  S6 05 Cr. 1067 (KMK)
                                    :
MARION JONES,                       :
                                    :
                  Defendant.      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## GOVERNMENT'S SENTENCING MEMORANDUM

In advance of the sentencing of defendant Marion Jones ("Jones" or the "defendant"), the Government respectfully submits this Sentencing Memorandum. For the reasons set forth below, the Court should impose a sentence within sentencing range stipulated to by the parties.

**I.  Jones' False Statements In Connection With The Northern District of California Criminal Investigation**

    **A.  Introduction**

On October 5, 2006, Jones pled guilty to Count One of the Information, charging her with a violation of 18 U.S.C. § 1001. The United States Probation Office has prepared a Presentence Report (the "PSR") for this defendant that contains a determination that the total offense level was 4 and that the defendant's Criminal History Category was I. The PSR also states that the applicable Sentencing Guidelines range was 0 to 6 months' imprisonment. The Government agrees with the Sentencing Guidelines calculations contained in the PSR.

    **B.  Factual Background**

A federal criminal investigation ("the criminal investigation") commenced in the Northern District of California concerning the distribution of anabolic steroids and other illegal performance-enhancing drugs and the related money laundering of proceeds from said distributions centered around Balco Laboratories, Inc. ("BALCO"), a Burlingame, California

corporation performing blood-testing, among other functions. The criminal investigation subsequently expanded to include investigations into whether various witnesses committed perjury before the grand jury and whether witnesses made false statements to federal agents in the course of the federal agents' duties.

As part of the criminal investigation, on or about September 3, 2003, a federal search warrant, issued out of the Northern District of California, was executed at the BALCO premises. Among other things, investigators obtained evidence concerning Jones and her relationship with BALCO, Trevor Graham (Jones' former athletic coach), and other professional athletes. Internal Revenue Service - Criminal Investigation ("IRS-CI") special agents seized a multi-page ledger containing the names of BALCO's client-athletes. This ledger also listed the corresponding doses each client-athlete was taking and information transcribed from urine test results for those client-athletes on tests conducted by Quest Diagnostics for the presence of anabolic steroids and masking agents. Throughout the ledger abbreviated entries appear, such as, "Nor," "Tren," and "IOC." See Affidavit of Jeffrey Novitzky ¶ 2 (sworn to on Dec. 19, 2007) ("Novitzky Aff.").

Specifically listed on two pages of the ledger is the name "Marion J," referring to the BALCO client-athlete Marion Jones, the defendant in this matter. See Novitzky Aff., Exh. A. Under the "Marion J" entry on each page are multiple notations indicating the use of both Norbolethone and THG during the time period from September of 2000 through June of 2001. James Valente ("Valente"), the former vice president of BALCO, has provided the government with information that he was the creator of this ledger and that the entries for "Marion J" referred to Marion Jones. Valente also stated that the ledger represented the use of these drugs by these client-athletes, as well as the results of the tests for the presence of anabolic steroids conducted

on these client-athletes' urine samples. Valente also provided specific information of his knowledge of Marion Jones' receipt of "the clear," the nickname used by BALCO and its client-athletes for Norbolethone and THG. Novitzky Aff. ¶¶ 3-4.

On September 3, 2003, Victor Conte ("Conte"), the president of BALCO, provided both verbal and written consent to federal agents to search a storage locker he retained at a personal storage facility in Burlingame, California. IRS-CI agents seized multiple items from Conte's storage locker, including several boxes of yellow manila folders labeled with the names of client-athletes. These folders contained multiple documents referring to specific athletes, including a yellow manila folder labeled "Marion Jones." Within that folder were several monthly calendars that contained the initials "MJ" on them. Novitzky Aff., Exh. B. Calendars for the months of March through July of 2001 were seized within the Marion Jones folder labeled with the initials "MJ." Contained throughout the "MJ" calendars on multiple dates were the handwritten letters E, C, G, and I.

IRS-CI agents have learned through BALCO employees, other BALCO client-athletes, and emails and notes seized during the course of the investigation, that these calendars containing the above-referenced handwritten letters are "doping calendars," created for the BALCO athlete-clients as a guideline for their use of athletic performance-enhancing drugs received from BALCO. The handwritten letters on the doping calendars were shorthand for the names of the actual performance-enhancing drugs, where "E" represented erythropoietin or EPO, "C" represented "the clear" or the designer steroids Norbolethone and THG, "G" represented human growth hormone, and "I" represented Insulin. Each of these drugs has athletic performance-enhancing benefits when administered according to a doping program. Novitzky Aff. ¶ 5.

3

Also contained within the manila folder labeled "Marion Jones" were blood test reports that were labeled with Marion Jones' name and date of birth. Information from these tests was used to make contact with a phlebotomist in Raleigh, North Carolina, who confirmed that she withdrew blood from Marion Jones on multiple occasions, sent the blood for testing by American Medical Laboratories, Inc., and that those test results were the same blood test results seized from Conte's storage locker. Novitzsky Aff. ¶ 6.

The use of EPO, which is reflected in the "doping calendars" found within the manila folder labeled with "MJ," Novitzky Aff., Exh. A, artificially stimulates the production of red blood cells within the user's body. EPO is administered by injection only and is typically injected subcutaneously, just under a fold of skin in the abdomen area. The hematocrit level in one's blood, which is the percentage of red blood cells in a specified blood volume, is a marker used to measure the effectiveness of EPO.

The data contained on the blood test reports of Marion Jones was provided to Dr. Michael Sawka, the Chief of Thermal and Mountain Medicine in the U.S. Army's Research Institute of Environmental Medicine. Dr. Sawka is an expert on the use of EPO and its effects on the body. After reviewing this data, Dr. Sawka stated that, with conservative calculations, the increase in hematocrit levels between two of the tests, taken approximately 2 weeks apart, showed approximately three times the amount of red blood cells added than what could normally be expected to be produced naturally. Novitzky Aff. ¶ 8. Examination of the "doping calendars," Novitzky Aff., Exh. B, reveals an approximate two-week use of "E," or EPO, corresponding to the dates contained within the blood test reports reviewed by Dr. Sawka.

### C. The Defendant's False Statements

As part of the criminal investigation, on November 4, 2003, an IRS-CI special agent interviewed Jones, in the presence of her attorneys, in San Jose, California. Prior to the interview, a letter immunity agreement between Jones and the United States Attorney's Office for the Northern District of California covering Jones's interview was completed. The letter immunity agreement specifically stated that Jones was not immunized from prosecution for making false statements during the interview.

As part of the criminal investigation, defendant Jones was interviewed regarding the following matters, among others, which were material to the Balco investigation: (a) whether Jones had ever taken athletic performance-enhancing drugs; (b) whether Jones had ever seen and used a performance-enhancing drug referred to as "the clear;" and (c) whether Jones had received the items referred to in (a) and (b) from Trevor Graham. Jones stated, in sum and substance, that: (a) she had never taken athletic performance-enhancing drugs; (b) she had never seen and ingested a performance-enhancing drug, referred to as "the clear;" and (c) she had never received any such items from Trevor Graham. Each of these statements was false, and the defendant knew each was false at the time she made them.

### D. Conclusion

The defendant's use of performance-enhancing drugs encompassed numerous drugs (THG, EPO, Human Growth Hormone) and delivery systems (sublingual drops, subcutaneous injections) over a substantial course of time. Her use of these substances was goal-oriented, that is, it was designed to further her athletic accomplishments and financial career. Her false statements to the IRS-CI agent were focused, hoping not only to deflect the attention of the

investigation away from herself, but also to secure the gains achieved by her use of the performance-enhancing substances in the first place. The false statements to the IRS-CI agent were the culmination of a long series of public denials by the defendant, often accompanied by baseless attacks on those accusing her, regarding her use of these substances.

The context of the defendant's use of performance-enhancing substances, as detailed in the documents seized from BALCO, shows a concentrated, organized, long-term effort to use these substances for her personal gain, a scenario wholly inconsistent with anything other than her denials being calculated lies to agents who were investigating that same conduct.

**II.     Jones False Statements In Connection With The
         Southern District of New York Criminal Investigation**

   **A.     Factual Background**

As the Court is aware from presiding over the trial of Steven Riddick ("Riddick"), Nathaniel Alexander ("Alexander"), and others, this case arose from a long-term investigation in this District of a massive check fraud scheme. The originators in this scheme had nearly unlimited supplies of bogus checks and were constrained only by the need to recruit account-holders willing to deposit the checks and launder the proceeds back to the originators. One of the originators in this case was Douglas Shyne, who through an intermediary, was introduced to Timothy Montgomery ("Montgomery") in 2005. Montgomery was a world-class athlete who was at the time residing with the defendant, herself a celebrated athlete. In the Spring of 2005, Montgomery himself deposited a counterfeit check into his own account and in turn recruited others to deposit into their respective accounts additional counterfeit checks in high-dollar amounts. One of these account-holders was the athletic coach who trained both Montgomery and the defendant, Riddick, and another was Riddick's officemate and friend,

6

Alexander.  Among other things, Alexander deposited a counterfeit chk for $850,000 into a business bank account he held, and wrote a number of proceeds checks drawn from the bogus check.  One of those checks, in the amt of $25,000, was made out to the defendant, and was endorsed and deposited by her.  Montgomery also enlisted his sports agent, Charles Wells, to deposit two checks for over $1,000,000 into Wells's bank accounts, and as noted, Montgomery himself deposited a counterfeit check for $200,000 into a business bank account he held -- an account that had been largely dormant until that time.  Significantly, just days before the deposit of this check, Jones was added as a signatory to this account and as an officer of Montgomery's "business."

      **B.**      <u>**The Defendant's False Statements**</u>

In preparing for the trial of the check fraud case, agents from Immigration and Customs Enforcement and members of the United States Attorney's Office met with the defendant, along with her attorney, at the United States Attorney's Office for the Southern District of New York, on two separate occasions.  At the first meeting, held on August 2, 2006, the defendant denied any knowledge of the $25,000 check from Alexander.  This was false, as Jones well knew that she had indeed received, endorsed, and deposited that check.  On that same date, and again at a meeting on September 5, 2006, the defendant stated that she was unaware that Montgomery had received any large checks during 2004 and/or 2005.  This, too, was false, as she well knew that Montgomery had indeed received a fraudulent check in the amt of $200,000 in 2005.  In fact, as noted above, the defendant was added as an officer and co-signer on the account into which that check was deposited for the very purpose of receiving proceeds from that check. Relatedly, in the meetings at the U.S. Attorney's Office on those two dates, the defendant denied knowledge of

Montgomery's involvement in a check fraud scheme, when in fact she had had explicit discussions with him about this scheme and was aware of his involvement.

    **C.**    **Conclusion**

Jones was very nearly a witness for the Government in the criminal trial before your Honor. It is difficult to articulate how catastrophic would have been her perjurious testimony had the Government not fortuitously learned, at the eleventh hour, of the falsity of her statements. The defendant's false statements derailed the Government's investigative efforts and were highly material to its criminal investigation.

### III. Conclusion

For the reasons set forth above, the Court should impose a sentence within sentencing range of 0 to 6 months' imprisonment stipulated to by the parties.

Dated: December 21, 2007
      New York, New York

                              Respectfully submitted,

                              MICHAEL J. GARCIA
                              United States Attorney for the
                              Southern District of New York


                      By: _____/s/_____
                              E. Danya Perry/Daniel W. Levy
                              Assistant United States Attorneys
                              Telephone:  (212) 637-2434/(212) 637-1062

                              SCOTT N. SCHOOLS
                              United States Attorney for the
                              Northern District of California


                      By: _____/s/_____
                              Matthew A. Parrella/Jeffrey D. Nedrow/
                              Jeffrey R. Finigan
                              Assistant United States Attorneys
                              Telephone: (408) 535-5042/(408) 535-5045/
                              (415) 436-7232

## AFFIRMATION OF SERVICE

DANIEL W. LEVY, pursuant to 28 U.S.C. § 1746, declares under the penalty of perjury:

I am employed in the Office of the United States Attorney for the Southern District of New York.

On December 21, 2007, I caused the foregoing GOVERNMENT'S SENTENCING MEMORANDUM and the accompanying AFFIDAVIT OF JEFFREY NOVITZKY, together with the exhibits attached thereto, to be served via Clerk's Notice of Electronic Filing upon the following attorney, who is a filing user in this case:

>Henry John DePippo, Esq.
>Nixon Peabody LLP
>Clinton Square
>P.O. Box 31051
>Rochester, New York 14603
>
>Counsel to defendant Marion Jones

with a courtesy copy of the same by electronic mail to:

>F. Hill Allen, Esq.
>Tharrington Smith, LLP
>209 Fayetteville Street
>Raleigh, North Carolina  27602
>
>Counsel to defendant Marion Jones

I declare under penalty of perjury that the foregoing is true and correct.  Executed on December 21, 2007, at New York, New York.

_____/s/_____
Daniel W. Levy