UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
UNITED STATES OF AMERICA        :
                                :
    -v.-                        :    S6 05 Cr. 1067 (KMK)
                                :
MARION JONES,                   :    AFFIDAVIT OF JEFFREY NOVITZKY
                                :
            Defendant.          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

STATE OF CALIFORNIA             )
COUNTY OF SANTA CLARA           : ss.:
NORTHERN DISTRICT OF CALIFORNIA )

       JEFFREY NOVITZKY, pursuant to Title 28, United States Code, Section 1746, hereby declares under penalty of perjury:

       1.    I am a Special Agent for the Internal Revenue Service - Criminal Investigation division ("IRS-CI"). I submit this affirmation in connection with the sentencing of defendant Marion Jones ("Jones" or the "defendant"). Because this Affidavit is being submitted for this limited purpose, I have not set forth each and every fact learned during the course of the investigation or in the prosecution of this and related criminal cases.

       2.    Along with numerous other law enforcement officials, I participated in the execution of a federal search warrant at BALCO Laboratories in Burlingame, California on September 3, 2003. IRS-CI agents seized a multi-page ledger containing the names of client-athletes. This ledger also lists the corresponding doses each client-athlete was taking and information transcribed from urine test results for those client-athletes on tests conducted by Quest Diagnostics for the presence of anabolic steroids and masking agents. Throughout the ledger are the abbreviated entries "Nor," "Tren," and "IOC."

3.  I have learned throughout the course of this investigation, specifically from statements made by employees of BALCO and BALCO athlete-clients, that the entry "Nor" represented the anabolic steroid Norbolethone, and the entry "Tren" and "IOC" represented the designer steroid Tetrahydrogestrinone ("THG"). These performance-enhancing substances were distributed by BALCO to client-athletes from approximately 2000 through September of 2003. At the time of their distribution, they were thought to be undetectable by standard anabolic steroid tests, yet still retained the strength-building and recovery benefits of traditional steroids.

3.  Specifically listed on two pages of the ledger is the name "Marion J." referring to the BALCO client-athlete Marion Jones, the defendant in this matter. (See attached exhibit A.) Under the "Marion J" entry on each page are multiple notations indicating the use of both Norbolethone and THG during the time period from September of 2000 through June of 2001. James Valente ("Valente"), the former vice president of BALCO, has provided the government with information that he was the creator of this ledger and that the entries for "Marion J" referred to Marion Jones. Valente also stated that the ledger represented the use of these drugs by these client-athletes, as well as the results of the tests for the presence of anabolic steroids conducted on these client-athletes' urine samples. Valente also provided specific information of his knowledge of Marion Jones' receipt of "the clear," the nickname used by BALCO and its client-athletes for Norbolethone and THG.

4.  On September 3, 2003, Victor Conte ("Conte"), the president of BALCO, provided both verbal and written consent to federal agents to search a storage locker he retained at a personal storage facility in Burlingame, California. IRS-CI agents seized multiple items

2

from Conte's storage locker, including several boxes of yellow manila folders labeled with the names of athlete-clients. These folders contained multiple documents referring to specific athletes. Including among those seized files was a yellow manila folder labeled "Marion Jones." Within that folder were several monthly calendars that contained the initials "MJ" on them. (See attached exhibit B.) Specifically, calendars for the months of March through July of 2001 were seized within the Marion Jones folder that contained the initials "MJ." Contained throughout the "MJ" calendars on multiple dates were the handwritten letters E, C, G, and I.

5. I am aware through multiple sources, including BALCO employees, other BALCO athlete-clients, and emails and notes seized during the course of the investigation, that these calendars containing the above-referenced handwritten letters are "doping calendars," created for the BALCO athlete-clients as a guideline for their use of athletic performance-enhancing drugs received from BALCO. Specifically, I have learned from the above-referenced sources that: "E" represented erythropoietin or EPO, "C" represented "the clear" or the designer steroids Norbolethone and THG, "G" represented human growth hormone, and "I" represented Insulin. I am aware through information received from experts in the medical field as well as athletes who have used the above referenced drugs, that each of these drugs has athletic performance-enhancing benefits when administered according to a doping program.

6. Also contained within the manila folder labeled "Marion Jones" were multiple blood test reports that were labeled with Marion Jones' name and date of birth. I used information from these tests to make contact with a phlebotomist in Raleigh, North Carolina, who confirmed that she withdrew blood from Marion Jones on multiple occasions, sent the blood

3

for testing by American Medical Laboratories, Inc., and that those test results were the same blood test results seized from Conte's storage locker.

7.   Through interviews with multiple medical experts in the field of athletic performance-enhancing drugs, I have learned that the use of EPO, which is reflected in the "doping calendars" found within the manila folder labeled with "MJ," (Exhibit A) will artificially stimulate the production of red blood cells within the user's body. EPO is administered by injection only and is typically injected subcutaneously, just under a fold of skin in the abdomen area. I have also learned that the hematocrit level in one's blood, or the percentage of red blood cells in a specified blood volume, is a marker used to measure the effectiveness of EPO.

8.   I provided the data contained on the blood test reports of Marion Jones, contained within the yellow manila folder that was found in Conte's storage locker, to Dr. Michael Sawka, the Chief of Thermal and Mountain Medicine in the U.S. Army's Research Institute of Environmental Medicine. Dr. Sawka is an expert on the use of EPO and its effects on the body. After reviewing this data, Dr. Sawka stated that, with conservative calculations, the increase in hematocrit levels between two of the tests, taken approximately 2 weeks apart, showed approximately three times the amount of red blood cells added than what could normally be expected to be produced naturally.

///

///

///

9. Examination of the "doping calendars" (exhibit B) found within Marion Jones' folder found at Conte's storage locker reveal an approximate two-week use of "E," or EPO, corresponding to the dates contained within the blood test reports reviewed by Dr. Sawka.

I declare under penalties of perjury that the foregoing is true and correct, pursuant to 28 U.S.C. § 1746.

Dated: San Jose, California
       December 19, 2007

_____
Jeffrey Novitzky
Special Agent IRS-CI

Sworn to before me this
19th day of December, 2007

_____
Notary Public

DIANA HWANG
Commission # 1642222
Notary Public - California
Santa Clara County
My Comm. Expires Jan 31, 2010