UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

    - v -                                    S6 05 Cr. 1067 (KMK)

MARION JONES-THOMPSON,

                    Defendant.

## SENTENCING MEMORANDUM OF MARION JONES-THOMPSON

**THARRINGTON SMITH, LLP**

F. Hill Allen
P. O. Box 1151
209 Fayetteville St.
Raleigh, North Carolina  27602
Phone:      (919) 821-4711
Fax:          (919) 829-1583
E-mail:  hallen@tharringtonsmith.com

**NIXON PEABODY LLP**

Henry J. DePippo
1100 Clinton Square
Rochester, New York  14603
Phone:  (585) 263-1243
Fax:      (866) 947-0838
E-mail:     hdepippo@nixonpeabody.com

*Counsel for Defendant, Marion Jones-Thompson*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v -                                                     S6 05 Cr. 1067 (KMK)

MARION JONES-THOMPSON,

                                Defendant.

**SENTENCING MEMORANDUM OF MARION JONES-THOMPSON**

Defendant Marion Jones-Thompson ("Marion" or "Ms. Jones-Thompson"), through her undersigned counsel, respectfully submits this Sentencing Memorandum, along with the attached exhibits, for the Court's consideration in connection with her sentencing scheduled for January 11, 2008. Under all of the factors enumerated in 18 U.S.C. § 3553(a), including the zero to six month stipulated advisory Sentencing Guidelines range, and for all of the reasons set forth below, the defendant respectfully requests that the Court impose a term of probation with such conditions as the Court deems appropriate.

**ARGUMENT**

**Section 3553(a) Factors And The Advisory Sentencing Guidelines Range
Support A Sentence Of Probation**

**I.       Background**

On October 5, 2007, Marion Jones-Thompson pleaded guilty to a two-count Information charging her with making false statements to investigators in violation 18 U.S.C. § 1001. The plea was based upon her false denials of having taken a performance enhancing substance known as "the clear" from September 2000 to July 2001 and of having knowledge of a check fraud scheme involving the biological father of her older son.

**II.     Relevant Factors Pursuant to 18 U.S.C. § 3553(a)**

Following *United States v. Booker*, 543 U.S. 220 (2005), in imposing sentence, courts must now consider the impact of the factors enumerated in 18 U.S.C. § 3553(a) in addition to the advisory Sentencing Guidelines calculation. Of course, pursuant to 18 U.S.C. § 3553(a), the guiding principle in sentencing is that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. Marion Jones-Thompson's personal history and characteristics, the nature and circumstances of the offenses to which she pled guilty, the advisory Sentencing Guidelines range and each of the other § 3553(a) factors support a sentence at the lowest end of the Sentencing Guidelines range, namely, probation.

      A.     <u>Section 3553(a)(1): The History and Characteristics of the Defendant and the Nature and Circumstances of the Offense</u>

           1.     <u>History and Characteristics of the Defendant</u>

The select letters submitted as Exhibit A to this Memorandum offer a glimpse of the private qualities of this young woman – Marion Jones-Thompson the person, not the persona. Those who really know Marion describe "her humility," "her relentless discipline," her "approachability," "her genuine kindness, respect and modesty towards all" and "the universally respectful way" in which she treats others. (*See e.g.*, Exh. A, Johnson, Thompson and McKoy). She "is thoughtful and caring, both in words and actions, to her husband and children, her family and friends. She offers people her help . . . ." (Exh. A, Humphrey).

The letters reveal Marion as "a loving and fiercely loyal friend," and "a wonderful friend and confidant." (Exh. A, Johnson and McKoy). Even from a young age, and with demands on her time, she "was always there to offer words of encouragement, listen to problems, offer words of advice" and give comfort in times of loss. (Exh. A, McKoy and Humphrey).

She is the kind of person who puts aside her own interest for those of a friend. Melissa Johnson, for example, recalls how Marion flew back from Berlin to New York on a red-eye when Melissa's father suddenly passed away in 1999. Marion's "coach and husband were nervous wrecks; she was in the middle of one of the most important summers of her career. They were especially concerned because she had tweaked her knee in the race and they wanted to convince her to see a doctor. Marion wouldn't hear any of it. She was determined to sit on my couch with a Glad plastic bag of ice on her knee and make sure that I was okay." (Exh. A, Johnson). Or, as Melissa recalls, how Marion showed up for her when Melissa was having anterior cruciate ligament surgery: "[N]ever the diva, Marion was content to sit in the dimly lit hospital hallway for about four hours on an upside down plastic bucket, waiting for me to wake up." (*Id*).

She is also the kind of person who gives back not only to family and friends but who has given to communities all over the world. Among other efforts, she formed the Marion Jones Foundation in Belize "to improve the country's sports facilities" and "was involved with a campaign to immunize infants in Ghana; taught track and field clinics in Switzerland and South Africa; worked various agencies to provide physical fitness, nutrition, etc." (PSR ¶ 89). A letter from Henry McKoy offers one such example: "Even as she traveled the world, competing, I know first hand that she committed herself to mentoring and coaching children in our community here in North Carolina. She spent her Saturday mornings coaching youth basketball and much of the rest of her week speaking to kids about setting goals and being the best they can be." (Exh. A, McKoy).

Most importantly, consistent with the other qualities revealed by those who know her, the letters confirm Marion's "devotion," her "dedicat[ion]," to her two young sons. (Exh. A,

McKoy, Johnson and Humphrey).  Along with her faith (*see* Exh. A, Humphrey), her devotion to her family has guided and sustained her through these difficult times.  Marion has been married for a little over ten months to Obadele Thompson, a professional sprinter. (PSR ¶ 69).  Together, they have a young son born this summer, who was only a few months old at the time of her guilty plea. (*Id.* ¶ 70).  In addition, Marion has a son from a prior relationship who is now four years old. (*Id.* ¶¶ 67-68).  Marion has raised her four year-old without financial assistance or other support or involvement from his biological father. (*Id.* ¶ 68).

Marion is essential to the care of both of her children in every way that a mother can be.  Her infant son requires her daily nurture.  Her four year-old also depends on her.  As her husband Oba puts it, "She has taken on the roles of motherhood and wife with a seriousness and passion that few outside of our inner circle get to witness. . . . [H]er primary focus has been on nurturing two young boys who doubtless need their mother every day." (Exh. A, Thompson).

The letters submitted with this Memorandum confirm this "lesser-known side of Marion: a loving mother totally devoted to her children." (Exh. A, Humphrey).  "She has become a 'mother extraordinaire' and I oft times stand in awe of her in that regard." (Exh. A, McKoy).  "Most importantly, it is obvious as you see her and the children, just how much [her sons] love and depend on her.  Her devotion to them is undeniable, unwavering, and so gratifying to see." (*Id*).

The PSR and the letters to the Court in connection with this sentencing demonstrate beyond any doubt that Marion has affected numerous people in the most positive ways: providing for her family, performing charitable work, assisting family members and friends, and providing an example of humility and respect for others.  It is precisely this type of person whose "history and characteristics" warrant favorable consideration under 18 U.S.C. § 3553(a)(1).  In

sum, Marion Jones-Thompson's personal history and characteristics are such that a sentence at the lowest end of the stipulated advisory Sentencing Guidelines range is warranted. We respectfully request that the Court, in sentencing Marion Jones-Thompson, evaluate her whole life and her many contributions and to take these into consideration when imposing sentence.

2.     Nature and Circumstances of the Offense

Although highly relevant at sentencing, Marion's personal history and characteristics do not negate the seriousness of the offenses to which she has pleaded guilty. Ms. Jones-Thompson had an obligation to make true and correct statements to investigators who interviewed her and she failed to do so. Significantly, Marion has fully accepted responsibility for her misconduct.[1]

Marion pled guilty prior to indictment. She did so freely and voluntarily. Six months prior to her plea, Marion admitted to government counsel and investigators in the Southern District of New York check fraud investigation that she had lied to them about the matters set forth in Count Two of the Information. The Information refers to two interviews as part of the check fraud investigation. On April 8, 2007, Marion traveled to New York for a third interview. She affirmatively acknowledged what she admitted to the Court months later in her allocution as to Count Two. She did so without immunity or other promises from the Government.[2]

---

[1] The Government filed a Sentencing Memorandum in this matter requesting a sentence within the stipulated Sentencing Guidelines range of zero to six months. Because the Government's submission requests the same thing as the defendant at bottom – a sentence within the agreed upon Sentencing Guidelines range – the defendant need not, and does not, address the matters set forth in the memorandum in detail except as set forth in footnote 2, *infra*.

[2] The Government in its Sentencing Memorandum implies that Ms. Jones-Thompson might have perjured herself had she been called as a trial witness in the check fraud matter before Your Honor. The implication is entirely speculative. The fact of the matter is that Ms. Jones-Thompson did give statements under oath in Your Honor's courtroom – at her guilty plea proceeding. Her statements were entirely truthful – the Government does not, and cannot, claim otherwise.

5

Six months later, immediately following her lengthy allocution and plea, Marion also made a statement to the public. In her statement, she accepted responsibility without excuse, equivocation or any attempt to shift blame. She spoke these painful words:

- "[I]t is with a great amount of shame that I stand before you and tell you that I have betrayed your trust."

- "I want you to know that I have been dishonest and you have the right to be angry with me."

- "Making these false statements to federal agents was an incredibly stupid thing for me to do and I am responsible fully for my actions. I have no one to blame but myself for what I have done."

- "I have let them down; I have let my country down; and I have let myself down."

Marion's acts of acceptance of responsibility – her lengthy allocution and plea before this Court, her admissions in the Southern District of New York investigation months before her plea, her public statement immediately following her plea – not only support the recommended two-level Sentencing Guidelines reduction, but also affirm Marion's understanding of her responsibility in this matter.

Although Ms. Jones-Thompson acknowledges fully that the offenses to which she pleaded are serious ones, the offenses do not define this woman of character who has fully accepted responsibility for her misconduct in an extraordinarily forthright and public manner.

      B.    Section 3553(a)(2): The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Provide Just Punishment and Deterrence

The law requires the Court to "impose a sentence *sufficient, but not greater than necessary* to comply with the [following] purposes": "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training,

6

medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2) (emphasis added). These factors also weigh heavily in favor of a probationary sentence for Marion Jones-Thompson.

The guilty plea in this matter and the circumstances surrounding it have been a very painful and life-changing experience for Marion Jones-Thompson. She has been cast from American hero to national disgrace. This part of her story will forever be one of personal tragedy. To be clear, the public scorn, from a nation that once adored her, and her fall from grace have been severe punishments. She has suffered enormous personal shame, anguish, and embarrassment. She has been stripped of her gold medals, her accomplishments, her wealth and her public standing.

The direct consequences of Marion's guilty plea have been profound, as she knew they would be when she entered her plea. As a result of her conduct and plea, Marion has lost her previous livelihood. Professional track and field is the only career Marion has ever known. She began her career in 1997, when she graduated from college. (PSR ¶ 89). Immediately following her plea, she announced her retirement from "the sport of track and field, a sport which I deeply love," and has submitted the required paperwork to the United States Track & Field Association, which then notified the other governing bodies. (*Id*). Her competitive career is over. *See United States v. Gaind*, 829 F. Supp. 669, 671 (S.D.N.Y. 1993), *aff'd*, 31 F.3d 73 (2d Cir. 1994) (court granted downward departure where "*elimination of the defendant's ability to engage in similar or related activities – or indeed any major business activity – for some time, and the substantial loss of assets and income resulting from this have decreased for the foreseeable future his ability to commit further crime of the type he was tempted to undertake, and constitutes both individual and general deterrence.* Others engaged in similar activities or considering engaging in them

7

have doubtless already learned through informal sources that loss of the business entity involved is an obvious consequence of such illegal behavior.") (emphasis added).

Also, immediately following her plea, Marion arranged for the return of five Olympic medals from the 2000 Sydney Games, and delivered those medals to appropriate officials on the first business day following her plea. (Exh. C, Receipt). On that same day, Marion accepted a sanction from the United States Anti-Doping Agency. That sanction included a two-year ban on competition and coaching, and disqualification of all competitive results from September 1, 2000 through October 7, 2009. (Exh. C, Acceptance of Sanction and USADA Press Release).

Since then, the national and international governing track-and-field organizations, including the United States Olympic Committee, the Unites States Association of Track and Field, the International Association of Athletics Federations and the International Olympic Committee, have all sanctioned Marion and prominently publicized their respective sanctions. (Exh. B, Press Releases by IAAF & IOC, and Decision by IOC Executive Board). *See United States v. Redemann*, 295 F. Supp. 2d 887, 897 (E.D.Wis. 2003) (granting downward departure because a number of purposes of sentencing had been satisfied where "defendant was subjected to a substantial monetary penalty by the OCC and subject to substantial amounts of adverse publicity, which caused direct and collateral harm to him and his family" and served to provide specific and general deterrence).

There clearly is no need here for a term of imprisonment to deter Marion Jones-Thompson who, other than the matter presently before the Court, has led a completely law-abiding life, without any blemishes on her record. Nor is any prison term necessary to protect the public from Ms. Jones-Thompson, who poses no threat to the community.

Moreover, any necessary deterrent message to the public has already been sent. In particular, Marion Jones-Thompson, immediately upon pleading guilty before Your Honor, went out to the courthouse steps and delivered the message herself. In her own words: "[m]aking these false statements to federal agents was an incredibly stupid thing for me to do…."

The deterrent message has been broadcast on a widespread basis: Ms. Jones-Thompson and her family have endured shame and humiliation on national and international stages. Marion has lost almost everything she held dear. She has lost her livelihood. She has been ruined financially. She has lost her reputation. The national and international media and sporting authorities have not hesitated to portray her in the worst light. With Marion's affirmative acceptance, her every athletic achievement since September 2000 has been erased. (*See* Exh. C, USADA Acceptance of Sanctions). Marion immediately returned her five Olympic medals, and, since then, the national and international Olympic authorities have formally stripped them with much fanfare. The governing professional bodies have done likewise. As the direct result of her conduct and plea, Marion has been publicly shamed, vilified and excoriated. Under the circumstances, a custodial term is not necessary to achieve individual or general deterrence. The very fact that Marion has been convicted on a criminal charge for having made false statements will provide a stark warning for any person contemplating similar conduct. We respectfully submit that a term of probation will provide sufficient deterrence.

Indeed, probation carries its own deterrent effect. *See Gall v. United States*, ___ S. Ct. ___; 2007 WL 4292116, *6 (decided December 10, 2007). Earlier this month, the Supreme Court emphasized the "'substantial restriction of freedom' involved in a term of . . . probation":

> Offenders on probation are . . . subject to several standard conditions that substantially restrict their liberty. *See United States v. Knights*, 534 U.S. 112, 119 (2001) ("Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled'" (quoting *Griffin v. Wisconsin*,

9

>483 U.S. 868, 874 (1987)).  [Footnote omitted] Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court.  They must report regularly to their probation officers, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking.  USSG §5B1.3.  Most probationers are also subject to individual "special conditions" imposed by the court.

*Id.*

As the United States Probation Office has aptly observed here, "[i]t seems as though the defendant has already suffered greatly and experienced much personal, financial and professional loss" as a result of her plea.  (PSR p. 33).  Indeed, especially in light of the tangible and intangible punishment that Marion has already experienced, in this and related proceedings, there is no need for a sentence that is more severe than probation.

      C.      <u>Section 3553(a)(3): The Kinds of Sentences Available</u>

A term of probation is available under both the Sentencing Guidelines and the statute of conviction.  Given Marion Jones-Thompson's history and personal characteristics, it is clear that a term of probation would be an appropriate sentence in this case.  This type of sentence would provide for just punishment and adequate deterrence while allowing Ms. Jones-Thompson an opportunity to continue to raise her family, try to rebuild her life and redeem herself.

      D.      <u>Section 3553(a)(4), (5): The Sentencing Range Established by the Sentencing Guidelines</u>

The Plea Agreement and the PSR set forth the correct advisory offense level computations.

      1.      <u>Stipulations in Plea Agreement</u>

In the plea agreement, the parties stipulated, *inter alia*, to the following calculations:

    a.    The base offense level applicable to the group comprised of Counts 1 & 2 (the offense counts) is six (6).

      b.      Assuming that the defendant has clearly demonstrated her acceptance of responsibility through allocution and subsequent conduct, a two-level reduction will be warranted.

      c.      In accordance with the above, the applicable Sentencing Guidelines offense level is four (4).

(PSR ¶ 4).

The stipulated Sentencing Guidelines range is zero to six (0-6) months. (PSR ¶ 4(C)(1)).

    2.    <u>PSR Calculation of Guideline Range</u>

The calculations in the PSR are consistent with those in the plea agreement. (PSR ¶ 102). Based on a base offense level of six and a two-level reduction for acceptance of responsibility, the total offense level is four (4) (PSR ¶ 51), yielding the Sentencing Guidelines range stipulated by the parties, zero to six months – the lowest range available under the Sentencing Guidelines. (PSR ¶ 101).

Thus, the Sentencing Guidelines themselves, along with the history and characteristics of Marion Jones-Thompson, including her history of abiding by the law, her having been a productive member of society, her family circumstances and other Section 3553(a) factors, demonstrate that a probationary, non-custodial, sentence is a particularly appropriate disposition in this matter.

**CONCLUSION**

For all of the foregoing reasons, and consistent with all of the information set forth in the PSR prepared by the United States Probation Office, as well as proper consideration of the factors set forth in 18 U.S.C. § 3353(a), Marion Jones-Thompson respectfully requests the Court to impose a term of probation with such conditions as the Court deems appropriate.

Dated: December 28, 2007

                                                  Respectfully submitted,

                                                  /s/ F. Hill Allen
                                                  F. Hill Allen
                                                  Tharrington Smith, LLP
                                                  P. O. Box 1151
                                                  209 Fayetteville St.
                                                  Raleigh, North Carolina  27602
                                                  Phone:       (919) 821-4711
                                                  Fax:           (919) 829-1583
                                                  E-mail:hallen@tharringtonsmith.com


                                                 /s/ Henry J. DePippo
                                                  Henry J. DePippo
                                                  Nixon Peabody, LLP
                                                  1100 Clinton Square
                                                  Rochester, New York  14603
                                                  Phone:       (585) 263-1243
                                                  Fax:           (866) 947-0838
                                                  E-mail:hdepippo@nixonpeabody.com

*Counsel for Defendant, Marion Jones-Thompson*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 31, 2007, I electronically filed the foregoing Sentencing Memorandum of Marion Jones-Thompson using the CM/ECF system, which sent notification of such filing to the following:

    E. Danya Perry        danya.perry@usdoj.gov
    Daniel Walter Levy    daniel.levy@usdoj.gov

- AND -

I hereby certify that on December 28, 2007 I served a copy of the foregoing Sentencing Memorandum of Marion Jones-Thompson on**:**

    Matthew A. Parrella, Esq.
    U.S. Attorney's Office, NDCa
    150 Almaden Blvd., Suite 900
    San Jose, California  95113

by then and there placing a true copy of the same, properly addressed, with the appropriate postage affixed, in the custody of Federal Express for overnight delivery.

        /s/ Henry J. DePippo
        Henry J. DePippo