

1100 Clinton Square
Rochester, New York 14604
(585) 263-1000
Fax: (585) 263-1600

Henry J. DePippo
Direct Dial: (585) 263-1243
E-Mail: hdepippo@nixonpeabody.com

January 9, 2008

Honorable Kenneth M. Karas
United States District Judge
Southern District of New York
United States Courthouse
300 Quarropas St., Room 533
White Plains, NY 10601

    RE:  *United States v. Jones-Thompson*, S6 05 Cr. 1067

Dear Judge Karas:

    The Court has asked the parties to address whether it has discretion to impose consecutive sentences for the two counts of conviction and, if so, applying the factors set forth in 18 U.S.C. § 3553(a), how it should exercise any such discretion. We respectfully submit that (i) the Court has the statutory authority to impose consecutive sentences, unless the Court imposes a sentence of probation; (ii) in order to impose consecutive sentences, the Court would have to upwardly depart or vary from the Sentencing Guidelines ("Guidelines") range (zero to six months) and the grouping rules set forth in U.S.S.G. § 5G1.2; (iii) the Court's discretion to upwardly depart or vary from the range would be limited by the bounds of reasonableness under *United States v. Booker*, 543 U.S. 220 (2005); and (iv) the Section 3553(a) factors militate against the Court exercising such discretion to upwardly depart or vary from the Guidelines range to impose consecutive sentences.

Authority of the Court to Impose Consecutive Sentences

    According to 18 U.S.C. § 3584(a), "[i]f multiple terms of imprisonment are imposed on a defendant at the same time ... the terms *may* run concurrently or consecutively...." "Multiple terms of probation, whether imposed at the same time or different times, run concurrently with each other." 18 U.S.C. § 3564(b).

    Under U.S.S.G. § 5G1.2(b) and (c), the total punishment, as calculated under the Guidelines, "shall run concurrently" on all counts of conviction "[i]f the sentence imposed on the count carrying the highest statutory maximum is adequate to achieve the total punishment...." Only "[i]f the sentence imposed on the count carrying the highest statutory maximum is less than

Honorable Kenneth M. Karas
January 9, 2008
Page 2 of 5

the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively ... In all other respects, sentences on all counts shall run concurrently...." U.S.S.G. § 5G1.2(d).

Although the Guidelines provisions appear to be mandatory, and do not appear to permit a court to impose consecutive sentences to achieve the total punishment, pre-*Booker* decisions have suggested otherwise. Before *Booker*, when the Guidelines were mandatory, appellate courts resolved the apparent tension between the permissive language of 18 U.S.C. § 3584(a) and the mandatory language of U.S.S.G. § 5G1.2 by holding that a sentencing court had the authority to depart from the grouping rules set forth in U.S.S.G. § 5G1.2, either upward or downward, where such a departure was otherwise warranted. *United States v. Rahman*, 189 F.3d 88, 156-57 (2d Cir. 1999); *United States v. Candelario-Cajero*, 134 F.3d 1246 (5th Cir. 1998). In exercising its discretion to impose a consecutive sentence, however, the Court must take into consideration "the factors set forth in section 3553(a)." 18 U.S.C. § 3584(b).

As the Court is aware, the Guidelines are now advisory following the Supreme Court's decision in *Booker*. 543 U.S. at 226-227; *see also, Gall v. United States*, __ U.S. __, 128 S. Ct. 586, 594 (2007). Accordingly, U.S.S.G. § 5G1.2 is merely advisory, along with all of the other guidelines provisions. *Booker*, 543 U.S. at 245 (remedial opinion "makes the Guidelines effectively advisory").

Thus, the Court has the discretion to upwardly depart from the grouping rules in U.S.S.G. § 5G1.2 or it may vary from the Guidelines to impose consecutive sentences, so long as such departure or variance is warranted after consideration of all of the factors set forth in 18 U.S.C. § 3553(a). In any event, any departure or variance must result in a substantively reasonable sentence.

<u>Consecutive Sentences Are Not Warranted Under the Section 3553(a) Factors</u>

Applying the Section 3553(a) factors to this case, we respectfully submit that the Court need not, and should not, impose consecutive sentences. Section 3553(a) contains "an overarching provision instructing district courts" to "impose a sentence sufficient, but not greater than necessary" to accomplish the goals of sentencing, including "to reflect the seriousness of the offense," "to promote respect for the law," "to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant." *Kimbrough v. United States*, __ U.S. __, 128 S. Ct. 558, 570 (2007) (*quoting* 18 U.S.C. § 3553(a)). The statute further directs a sentencing court, in determining the appropriate sentence, to consider "the nature and circumstances of the offense," "the history and characteristics of the defendant," "the sentencing range established" by the Guidelines, and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a).

In the Sentencing Memorandum of Marion Jones-Thompson, we provided the Court with an extensive discussion of the Section 3553(a) factors and will not repeat the discussion here. To

Honorable Kenneth M. Karas
January 9, 2008
Page 3 of 5

summarize, under the circumstances, a term of probation would be an appropriate sentence after considering all of the Section 3553(a) factors. Indeed, in recently affirming a downward variance under the Guidelines from a thirty-to-thirty-seven-month-range to probation, the Supreme Court itself has recognized that while "custodial sentences are qualitatively more severe than probationary sentences of equivalent terms," probation conditions substantially restrict liberty and "can have a significant impact on both that person and society...." *Gall*, 128 S. Ct. at 595, n.4.

Here, the Guidelines themselves dictate that a probationary sentence would be appropriate. Not only are the Guidelines an independent Section 3553(a) factor, 18 U.S.C. § 3553(a)(4), but they also take into account all of the other Section 3553(a) factors in establishing an appropriate sentencing range, including avoiding unwarranted sentencing disparities. As the Second Circuit has observed, the Guidelines "are the only integration of the multiple factors" set forth in section 3553(a). *United States v. Rattoballi*, 452 F.3d 127, 133 (2d Cir. 2006) (quotation omitted). Even though the Guidelines are now advisory, rather than mandatory, "the Guidelines should be the starting point and the initial benchmark." *Gall*, 128 S. Ct. at 596. Here, as noted in our Sentencing Memorandum, unlike the defendants in *Rattoballi* and *United States v. Tomko*, 498 F.3d 157 (3d Cir. 2007), whose Guidelines ranges dictated significant terms of imprisonment, Ms. Jones-Thompson is in the lowest possible Guidelines range – zero to six months, which permits a within-Guidelines sentence of probation.[1]

Moreover, as in *Gall*, when all of the Section 3553(a) factors are considered, the substantial restrictions on liberty inherent in a sentence of probation will provide an adequate general deterrent. As a result of her conduct and plea, Marion has already lost everything - the only livelihood she has ever known, her professional accomplishments, her financial security, and her reputation – all in the most public manner possible. This is not a case like *Tomko* where defendant received a sentence of home confinement in the very 8,000 square foot mansion on 8 acres of property, complete with outdoor pool, hot tub, sauna, full bar and nearly $2,000,000 in fine art and furnishings, *which he built through the very fraudulent tax evasion scheme of which he was convicted.* 498 F.3d at 166. Under the circumstances, the defendant was actually rewarded for his criminal conduct and the sentence may have had the effect of promoting, rather than deterring, criminal conduct. By contrast, faced with the specter of what has befallen Marion – being stripped of every professional accomplishment, being stripped of the ability to participate in any way in the only profession she has ever known, being financially ruined to the point where debts far exceed assets, being publicly humiliated in the media across the world, and having shamed and disappointed her peers, her friends and most of all, her family – no public observer of these proceedings would want to endure what Marion has endured as a result of her conduct and conviction. In sum, we respectfully submit that general deterrence does not require incarceration in this case, let alone consecutive sentences.

---

[1] The Guidelines range in *Tomko* was 12 to 18 months, 498 F.3d at 160, and 27 to 33 months in *Rattoballi*, 452 F.3d at 135.

To the extent the Court notes in its Order that the false statements involved separate investigations, and may be concerned that Ms. Jones-Thompson would not be sufficiently punished on the second count if she is not sentenced to consecutive sentences, we respectfully submit that, after considering all of the factors set forth in Section 3553(a), a probationary sentence would be appropriate. First, Marion has paid the price for her tardy admission to Southern District investigators and prosecutors – with a second felony charge and conviction. Second, the Guidelines, including the grouping rules, take into account both counts of conviction. And third, and perhaps most importantly, what has befallen her already is the result of both counts of conviction. Indeed, Marion's conduct, in its totality, was part and parcel of the same misguided, desperate attempt at self-preservation. To admit the truth effectively destroyed her reputation and achievements, and resulted in financial ruin and international disgrace – a very difficult and painful decision for a human being to make. To be clear, Marion regrets that she did not disclose to Southern District investigators in August what she admitted to them several months later about her knowledge of the check scheme. The fact of the matter is that Marion did admit the truth to Southern District investigators and prosecutors, before she was even charged.

Ms. Jones-Thompson could have put the government to its burden of proof, required it to expend significant resources (with two U.S. Attorney's Offices participating in a multi-week trial), and consumed judicial resources as well. In the event of a conviction, she would not have received the two-point adjustment for acceptance of responsibility, but at base offense level six, still would have been in a zero to six month Guidelines range. In that case, Ms. Jones-Thompson never would have had to admit her wrongful conduct. Instead, she accepted responsibility, in an extraordinarily public fashion, and removed any potential doubt about her wrongful conduct in connection with both investigations. In doing so, she immediately brought about sanctions from the governing athletic bodies, subjected herself to scorn from the public and the media, and effectively rendered herself unemployed and unemployable in her career of choice. We respectfully submit that, especially under these circumstances, the Court should not deprive her of the benefit of having accepted responsibility by upwardly departing or varying from the U.S.S.G. range to impose consecutive sentences, which would require *at a minimum*, a five-level departure/variance (from level four to at least level nine – more than double her current range and more than double the two-level adjustment she received for acceptance of responsibility).

Moreover, this was not a situation like in *Candelario-Cajero*, where the court held that an upward departure to impose consecutive sentences may be appropriate despite U.S.S.G. § 5G1.2, where the defendant, after having pleaded guilty to an offense, committed the same offense again, and then was sentenced for both offenses. 134 F.3d at 1249. There, the defendant showed that his plea was demonstrably insincere.[2] Here, by contrast, Ms. Jones-Thompson pleaded guilty, proceeded to the courthouse steps, held an impromptu press conference and publicly

---

[2] Likewise, in *United States v. Genao*, 343 F.3d 578, 581-582 (2d Cir. 2003), the defendant not only provided false statements to the government both before and *after* he was charged, but he also continued his deceit post-plea by providing testimony at his sentencing hearing that the district court found not credible about his lack of participation in a $65 million narcotics money laundering conspiracy.

acknowledged in her own words that what she did (lying to federal agents) was "incredibly stupid"; thus, publicly demonstrating the sincerity of her plea in a manner that was entirely respectful of the law.

Likewise, the circumstances of the offense here are qualitatively different from *United States v. Saldana*, 427 F.3d 298, 309 (5th Cir. 2005), where the tax protestor defendants, who were convicted after trial, filed numerous separate false IRS Form 8300s to retaliate against, intimidate and harass public officials who were involved in legal proceedings against them in an attempt to disrupt those proceedings. The Fifth Circuit affirmed the consecutive sentences as reasonable upward departures based on the harm done, the fear caused to the individuals targeted by the conduct, and the disruptions of the legal process on numerous occasions. The factors warranting the upward departures there – including "using the IRS as a personal 'attack dog'" to harass public officials as a deliberate tactic – are entirely absent here.[3] *Id.* at 311, 315.

Finally, we respectfully submit, in imposing a sentence sufficient but not greater than necessary to achieve the goals of the sentencing statute, that the Court, if it is to consider a sentence of imprisonment, instead order probation with a condition of home detention as a substitute for imprisonment. 18 U.S.C. § 3563(b)(19) (permitting home detention as a condition of probation as an alternative to imprisonment); U.S.S.G. § 5B1.3(e)(2)(same); U.S.S.G. § 5F1.2 (same); *see also* U.S.S.G. § 5B1.3(b) (permitting the court to impose conditions of probation that involve only such deprivations of liberty as are reasonably necessary to achieve purposes of sentencing set forth in section 3553(a)). As set forth in the PSR and the letters submitted to the Court on Marion's behalf, presently Marion is first and foremost the mother of an infant and a pre-school son. To the extent that the Court determines that any further punishment is warranted, we would respectfully request that the Court consider home detention, which would enable her to be a mother to her two young children.

Respectfully submitted,

/s/ Henry J. DePippo

Henry J. DePippo

F. Hill Allen
Tharrington Smith, LLP

cc:   E. Danya Perry, Esq.
      Matthew A. Parrella, Esq.

---

[3] Another element absent here is need for specific deterrence. Tax protestor cases generally involve defendants acting for a "cause," increasing the likelihood of recidivism. Indeed, with respect to one of defendants, in upwardly departing, the district court specifically noted "without 'an adequate sentence, *the Defendant will not be deterred* and will continue his unlawful activities.'" *Id.* at 315 (emphasis added).